UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | Civil Case No. 5:24-CV-00016 |
| v. | § § § § | |
| $27,000.00 U.S. CURRENCY | § | |

## REPORT AND RECOMMENDATION

The Government's Motion for Default Judgment and Entry of Final Order of Forfeiture, Dkt. No. 21, was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). For the following reasons, the undersigned respectfully **RECOMMENDS** that the Government's Motion for Default Judgment and Entry of Final Order of Forfeiture, Dkt. No. 21, be **GRANTED**.

### *Background*

According to the Amended Verified Complaint for Civil Forfeiture in rem and Notice to Potential Claimants, this case arises from the seizure of $27,000.00 in United States currency from Damian Alexis Espinoza at George Bush Houston Intercontinental Airport on August 9, 2023. Dkt. No. 15 at ¶ 3. Members of the Truck Air Rail Port ("TARP") drug interdiction detail received a tip that on August 8, 2023, Mr. Espinoza had booked a one-way flight from Atlanta, Georgia, to Los Angeles, California with a layover in Houston, Texas. *Id.* at ¶ 6. Because he had a suspicious travel itinerary, TARP members approached Mr. Espinoza at his departure gate in Houston, and he agreed to speak to them regarding his travel. *Id.* at ¶¶ 6–7.

During their conversation, Mr. Espinoza told the TARP members that was traveling home to Los Angeles after visiting Atlanta for two days, "seeking a business opportunity in an unidentified tire shop and [speaking] to an unidentified client." *Id.* at ¶ 7. However, when DEA Special Agent Cesar Hernandez asked Mr. Espinoza further questions about the type and brand of tires he planned to sell, Mr. Espinoza seemed unfamiliar with the tire industry. *Id.* When asked whether he was traveling with United States currency, Mr. Espinoza informed TARP members that he was travelling with $15,000.00 on his person and denied having further currency in his checked bag. *Id.* at ¶ 8. After a narcotics detection K9 alerted to Mr. Espinoza's checked bag, however, TARP members discovered an additional $12,000.00 inside, hidden inside the pocket of a pair of jeans and two pairs of socks. *Id.* at ¶¶ 8–9, 9 n.1. TARP members seized the United States currency found on Mr. Espinoza's person and in his checked bag, but he refused to answer further questions regarding the source of the currency. *Id.* at ¶ 9.

TARP members counted Defendant currency, which totaled $27,000.00. *Id.* at ¶¶ 9 n.2, 10. As they were counting the cash, "the smell of marijuana emanated from the currency." *Id.* at ¶ 10. After counting the currency, Houston Police Department ("HPD") K9 Officer Steve Fisher hid the currency in a sterile room, where his narcotics-detecting K9 located and alerted to it. *Id.* at ¶ 11. Furthermore, Special Agent Hernandez "noted that the currency was bundled in denominations consistently seen among narcotic traffickers." *Id.* at ¶ 10.

The Government initially filed a complaint against the seized currency on January 31, 2024, arguing that the seized currency is subject to forfeiture pursuant to 21 U.S.C. 881(a)(6), providing for the forfeiture of all currency exchanged or intended to be exchanged for a controlled substance. Dkt. No. 1. A warrant was executed regarding Defendant Currency on April 8, 2024. The clerks entered default on the original complaint on May 30, 2024, and the Government moved

for default judgment and a final order of forfeiture against Defendant Currency on June 6, 2024.

Dkt. Nos. 10–11.  However, the District Court denied the Government's Motion for Default

Judgment, holding that the Government had "failed to state sufficiently detailed facts to support a

reasonable belief that it would be able to meet its burden of proof at trial."  Dkt. No. 12 at 1; *see

also* Fed. R. Civ. P. Supp. R. G(2)(f).

The District Court granted the Government leave to amend its complaint, Dkt. No. 14, and

the Government's Amended Verified Complaint was filed on March 25, 2025.  Dkt. No. 15.  On

July 11, 2025, the Government filed a Declaration of Publication, certifying that notice of civil

forfeiture pursuant to the amended complaint was posted on the official government site,

www.forfeiture.gov, for thirty consecutive days from March 27, 2025, and April 25, 2025.  Dkt.

No. 17.  Likewise, proof of service upon known potential claimant Mr. Espinoza was filed on

September 23, 2025.  Dkt. No. 18.  While Adriana Jones and Howard Miller et al. are additional

known potential claimants, the Government previously advised that Jones and Miller et al.

withdrew a claim that they had filed with the DEA regarding Defendant Currency and thus "waived

any interest in the Defendant Funds."  Dkt. No. 15 at ¶ 4.  The Clerk of Court entered default

against Defendant Currency on September 25, 2025, and the Government filed the instant Motion

for Default Judgment approximately two months later.  Dkt. Nos. 20–21.

### *Legal Standards*

The Government must comply with all relevant procedural requirements in seeking default

judgment in an asset forfeiture.  *United States v. $11,409.02*, No. 4:21-CV-01349, 2021 WL

5177065 (S.D. Tex. Nov. 8, 2021).  The procedural requirements are found in Federal Rule of Civil

Procedure 55 and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset

Forfeiture Actions ("Rule G").  In addition to procedural compliance, the Government's Complaint

must establish a valid cause of action. *United States v. $19,840.00*, 552 F. Supp. 2d 632 (W.D. Tex. 2008). Default judgment must be appropriate under the *Lindsey* factors. *United States v. $11,409.02*, 2021 WL 5177065, at *2–3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). And, if default judgment is appropriate, the Court must determine "what form of relief, if any, the Government should receive," *United States v. $19,840*, 552 F. Supp. 2d at 635 (citing *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)), and confirm that the default judgment does not exceed nor differ from what is demanded in the complaint. Fed. R. Civ. P. 54(c).

### A. Procedural Requirements

The Government has complied with the relevant procedural requirements found in Federal Rule of Civil Procedure 55 and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G"). Rule 55 contains three steps for default judgments. When a defendant, or "claimant" in a forfeiture posture, fails to respond or otherwise defend against a lawsuit, they "default." Fed. R. Civ. P. 55(a). Once the plaintiff proves that failure through an affidavit or otherwise, the clerk of court enters the claimant's default, called "entry of default." *Id.* After default is entered, the plaintiff may move for default judgment. Fed. R. Civ. P. 55(b)(2).

In asset forfeiture cases, the Government must comply with the pleading and notice requirements of Rule G. *United States v. $62,200.00 in U.S. Currency*, Civ. No. H-21-3971, 2023 WL 2386884, at *1 (S.D. Tex. Mar. 6, 2023) (citing *In re Ramu Corp.*, 903 F.2d 312, 317 n.7 (5th Cir. 1990)). For pleadings, the Government's complaint must:

(a) be verified;
(b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
(c) describe the property with reasonable particularity;

(d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;
(e) identify the statute under which the forfeiture action is brought; and
(f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Fed. R. Civ. P. Supp. R. G(2).

The Government's Amended Complaint includes a verification from DEA Special Agent Cesar M. Hernandez that the facts included in paragraphs six through eleven, the Factual Basis for Forfeiture section of the Amended Complaint, "are based upon [his] personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of [his] investigation, and they are true and correct to the best of [his] knowledge and belief." Dkt. No. 15 at 6; *see* Fed. R. Civ. P. Supp. R. G(2)(a). The Government properly stated the grounds for jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355 and for venue pursuant to 28 U.S.C. §§ 1355, 1391(b), and 1395(a)–(b). Dkt. No. 15 at ¶¶ 1–2; *see* Fed. R. Civ. P. Supp. R. G(2)(b). Defendant Currency is described with particularity as the $27,000.00 seized from Mr. Espinoza at the George Bush Intercontinental Airport in Houston, Texas. Dkt. No. 15 at ¶ 3; *see* Fed. R. Civ. P. Supp. R. G(2)(c)–(d). And the Government clearly identifies that Defendant Currency is subject to forfeiture under 21 U.S.C. § 881(a)(6) as money provided in exchange for or related to the purchase of a controlled substance—in this case heroin—in violation of the Controlled Substances Act (21 U.S.C. § 801, *et seq*.). Dkt. No. 15 at ¶ 5; *see* Fed. R. Civ. P. Supp. R. G(2)(e).

Because the District Court denied the Government's Motion for Default Judgment based on the Original Complaint, Dkt. No. 12, holding that the Government failed to state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial under Rule G(2)(f), the undersigned next must address whether the Government has

succeeded to do so in its Amended Complaint. The undersigned finds that the Government has satisfied Rule G(2)(f).

In the Amended Complaint, the Government provided additional context for why Mr. Espinoza's explanation for his travel aroused suspicion. Namely, Mr. Espinoza seemed unfamiliar with the tire industry, despite his contention that he intended to open a tire shop in Atlanta. Dkt. No. 15 at ¶ 7. Moreover, the Government added that subsequent research indicated that Mr. Espinoza was unemployed at the time Defendant Currency was seized. *Id.* In its amendments to the complaint, the Government further included that "the smell of marijuana emanated from the currency" as it was counted by law enforcement. *Id.* at ¶ 10. The Amended Complaint also emphasizes that Special Agent Hernandez observed that Defendant Currency "was bundled in denominations consistently seen among narcotic traffickers," some in denominations of $20.00 bills, consistent with street-level narcotics sales, and some in denominations of $100.00 bills, consistent with narcotics sales in larger amounts. *Id.*

The undersigned finds the Government's amendments to the original complaint sufficient to support a reasonable belief that the Government would be able to meet its burden of proof at trial. Possession of a large amount of currency without credible explanation, packaged consistently with typical drug courier practices, concealed, and smelling of marijuana, confirmed by the alert of a narcotics canine, is sufficient circumstantial evidence to support the conclusion that the currency constitutes illegal proceeds of drug trafficking. *United States v. $369,980.00 in United States Currency*, Civil Action No. C-04-315, 2006 WL 8459966, at *3 (S.D. Tex. Mar. 10, 2006). Because the Government's Amended Complaint details additional circumstantial evidence that meets these criteria, they have met the requirement under Rule G(2)(f).

Rule G also requires the Government to provide notice to potential claimants of seized currency of the forfeiture action in several ways. Within a reasonable time, the Government must publish notice of the forfeiture on the Government's forfeiture website, and the notice must appear for at least 30 consecutive days. Fed. R. Civ. P. Supp. R. G(4)(a)(iii)(A), (4)(a)(iv)(C). The Government must also directly notify "any person who reasonably appears to be a potential claimant[.]" Fed. R. Civ. P. Supp. R. G(4)(b)(i). Directly notified potential claimants must file a claim within 35 days of receiving notice. Fed. R. Civ. P. Supp. R. G(4)(b)(ii). Other potential claimants must file their claims within 60 days of the first day the Government published notice on its website. Fed. R. Civ. P. Supp. R. G(5)(a)(ii)(B).

On July 11, 2025, the Government filed its Notice of Declaration of Publication, including proof that the amended complaint was posted on the official government site www.forfeiture.gov for at least thirty consecutive days, from March 27, 2025, through April 25, 2025, in compliance with Rule G(4)(a)(iv)(C). Dkt. No. 17. Additionally, the Government filed proof of service on known potential claimant Damian Alexis Espinoza by certified mail. Dkt. No. 18.[1] While there is no proof that known potential claimants Adriana Jones and Howard Miller, et al., were served with the Amended Complaint, the Government advised the Court that they withdrew their claim with the DEA, and thus "waived any interest in the Defendant Funds." Dkt. No. 15 at ¶ 4. Based on this representation, the undersigned concludes that at the time of the Amended Complaint, Adriana Jones and Howard Miller, et al., did not "reasonably appear[] to be . . . potential claimant[s]." Fed. R. Civ. P. Supp. R. G(4)(b)(i). Even if this were not the case, Adriana Jones and Howard Miller, et al., likely had actual notice of the forfeiture action because they were served with the original

---

[1] The notice itself states that Damian Alexis Espinoza was served by "electronic mail," Dkt. No. 18 at 1, but Attachment A is a certified mail receipt. *Id.* at 4. Although receipt by electronic mail was not verified, the Court finds that the certified mail receipt suffices to prove that the known potential claimant was properly served.

complaint.  Dkt. No. 7; *see* Fed. R. Civ. P. Supp. R. G(4)(b)(v) ("A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice.").  Accordingly, the undersigned finds that the Government has complied with the notice requirements under Rule G.

To respond or defend in a forfeiture action, a potential claimant must (1) file a claim for the property and (2) answer or file a Rule 12 motion.  Fed. R. Civ. P. Supp. R. G(5)(a)(i), G(5)(b).  Despite adequate notice from the Government, no claimant has completed either task.  Dkt. Nos. 17, 18.  The Government obtained entry of default on September 25, 2025.  Dkt. No. 20.  On November 17, 2025, the Government then properly moved for default judgment.  Dkt. No. 21.

### B. Valid Cause of Action

Beyond procedure, the Government must establish a valid cause of action, here a valid forfeiture.  *United States v. $19,840*, 552 F. Supp. 2d at 635.  The Government's cause of action is 21 U.S.C. § 881(a)(6), providing for the forfeiture of all monies exchanged or intended to be exchanged for a controlled substance in violation of 21 U.S.C. § 801, *et seq*., all proceeds traceable to an exchange, and all monies used or intended to be used to facilitate a violation of § 801.  Dkt. No. 15 at ¶ 5.  Since the Government is claiming the property was used in a criminal offense or was involved in the commission of one, it must prove there was a substantial connection between Defendant Currency and the alleged offense.  18 U.S.C. § 983(c)(3).  The Government's burden of proof is a preponderance of the evidence.  § 983(c)(1).  Additionally, when a claimant fails to respond, the Government's allegations are assumed to be true.  *See Nishimatsu*, 515 F.2d at 1206.

The additional facts included in the Government's Amended Complaint serve to establish a substantial connection between Defendant Currency and illegal drug activity.  *See, e.g.*, *United States v. $89,980.00 United States Currency*, 2012 WL 6020041, at *5–*6 (S.D. Tex. Nov. 9, 2012)

(holding that there was a substantial connection between the currency and illegal drug activity where the individual was "carrying substantial amounts of money," had made attempts to conceal it, was traveling in an area known for drug trafficking, had a narcotics canine alert to his vehicle, made inconsistent statements, and could not show a legitimate source for the money).

### C. The Lindsey Factors

In addition to being procedurally proper and there being a valid cause of action, default judgment must be proper considering the *Lindsey* factors. *United States v. $11,409.02*, 2021 WL 5177065, at *2–3 (citing Lindsey, 161 F.3d at 893). The factors are:

> (1) whether material issues of fact are in dispute; (2) whether there has been substantial prejudice to the plaintiff; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good-faith mistake or excusable neglect on the defendant's part; (5) whether default judgment is inappropriately harsh under the circumstances; and (6) whether the court would think itself obliged to set aside the default upon motion by the defendant.

*Id.* (cleaned up). None of the factors favor denying default judgment. Thus, default judgment is proper.

### D. Form of Relief

Finally, the Government requests appropriate relief. *See United States v. $19,840*, 552 F. Supp. 2d at 635 (citing *Nishimatsu*, 515 F.2d at 1206). Given the facts alleged by the Government and the relevant law, forfeiture of Defendant Currency is appropriate. Additionally, the request to forfeit $27,000.00 is the same relief as requested from the Amended Complaint, Dkt. No. 15, satisfying Rule 54(c).

### Conclusion

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the Government's Motion for Default Judgment, Dkt. No. 21, be **GRANTED**.

### *Warnings*

The parties may file objections to this Report and Recommendation, unless they waive the right to do so. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report— or the party's waiver of the right to do so—shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 150–53 (1985); *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

Signed this May 8, 2026, in Laredo, Texas.

Diana Song Quiroga
United States Magistrate Judge